# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF WEST VIRGINIA

**STEPHEN MICHAEL PAGE,**

    **Plaintiff,**

**v.**                                                                 **Civil Action No. 3:06cv131**
                                                                                    **(Judge Bailey)**

**USP HAZELTON WARDEN,**

    **Defendant.**

## REPORT AND RECOMMENDATION

On December 4, 2006, the *pro se* plaintiff, who is a federal inmate incarcerated at USP Hazelton, initiated this case by filing a civil rights complaint against the above-named defendant. On that same date, the Clerk's office sent the plaintiff a Notice advising him that he must either pay the $350.00 filing fee or complete an Application to Proceed Without Prepayment of fees, together with the additional forms necessary for the court to rule on the Application. On December 11, 2006, the plaintiff submitted the Application and supporting forms. On December 12, 2006, plaintiff was granted leave to proceed without prepayment of fees. This case is before the undersigned for an initial review and report and recommendation pursuant to LR PL P 83.02 and 28 U.S.C. §§ 1915A and 1915(e).

## I. The Complaint

In the complaint, plaintiff alleges that he has a civil rights case pending in the United States District Court, Central District of California (Western Division-Los Angeles). The plaintiff maintains that the action will be dismissed if he is not able to copy and mail various documents to

that Court.[1] The majority of the plaintiff's complaint outlines actions at USP Hazelton which he alleges have deprived him of the ability to comply with the directives of the District Court in California.[2]

It would appear from plaintiff's complaint that on October 14, 2006, prison staff ordered inmates to their housing units and Warden Haynes placed the prison on emergency lock down. On October 16, 2006, the F.B.I. conducted an investigation of Unit A-1 and interviewed each inmate confined to that unit. According to the plaintiff, the investigation lead to the discovery of an alleged homicide in Unit B which occurred on October 14, 2006. The plaintiff also alleges that on October

---

[1] The plaintiff is clearly referring to Civil Action No. 2:05cv0812, which was filed on November 16, 2005. In his complaint, the plaintiff alleged that upon his transfer to FCI II Victorville on February 2, 2005, he was improperly confined in the disciplinary segregation Special Housing Unit, and while in the Special Housing Unit, was deprived of access to medical treatments.

[2] On October 16, 2006, the United States Magistrate Judge in California recommended that the plaintiff's complaint be dismissed for failure to exhaust his administrative remedies prior to filing the complaint. That recommendation was adopted by Order entered on December 11, 2006. Despite plaintiff's allegations in the instant complaint that the staff at FCI Hazelton interfered with his ability to contest the Report and Recommendation, the docket sheet from Civil Action No. 2:05cv812, demonstrates that on October 17, 2006, the plaintiff filed at least 212 pages of exhibits. As well, the plaintiff filed a Preliminary Injunction Notice of Appeal together with a Motion to Proceed on Appeal in Forma Pauperis on October 23, 2006. On November 19, 2006, he filed an Application for an Extension of Time to File Objections to the Report and Recommendation, a Supplemental motion in support of need for additional time, a Motion to Strike Reply, Objections to Reply, Motion to Compel Production of certified record of this Case, Motion in opposition of dismissal or notice of appeal of dismissal, Objections and Notice of Appeal, Show Cause Ex Parte Addendum Supplement Motion, Motion for District Judge to determine Objections, Memorandum in Support of Appeal of 8-3-06 court order with attachments, Motion for Relief of untimely and or legal mail, Ex Parte Motion for Permanent Injunction against Federal Bureau of Prisons, Ex Parte Motion for Temporary Restraining Motion, Motion for Finding of fact, Supplemental to Ex Parte Application for Temporary restraining Order, Motion for copy of all UDSC standing orders for the central western division, and a Notice of compliance to rejection orders. On December 4, 2006, the plaintiff filed objections to the Report and Recommendation as well as six additional motions, memorandas and notices.

17, 2006, a new warden toured Unit A-1 and elaborated that "there will be snow on the ground before he allows the men out of their cells or the prison off of lock down." Finally, it appears that the plaintiff is alleging that everyone that the F.B.I. and prison administration believed contributed to the emergency lock down was transferred to the Special Housing Unit ("SHU").[3]

The plaintiff's complaint also alleges that during the month of October, he was granted access to a copier but was not allowed to complete copying of all needed documents. The plaintiff further alleges that on October 21, 2006, prison staff conducted a cell search and removed several legal documents, ink pens, and took all mailing parcels, flat rate envelopes, and flat rate box priority mail which were filled with legal documents and addressed to the United States District Court in Los Angeles and to the US Attorney.

In addition to his complaints outlined above, which the plaintiff maintains denied him access to the courts, the plaintiff also alleges that USP Hazelton does not maintain a satellite law library or staff to assist in preparation and research of legal documents to afford meaningful or effective access to the courts.

Finally, in a matter wholly unrelated to his claims regarding access to the courts, the plaintiff alleges that he was refused sick call by the physician's assistant on October 23, 2006, and the physician's assistant refused to provide medical care. As well, the plaintiff alleges that the staff at USP Hazelton has denied him access to Religious Diet Meals in violation of the Religious Freedom Restoration Act[4] and the First Amendment.

---

[3]It is not clear whether the plaintiff was transferred to the SHU.

[4]The Religious Freedom Rstoration Act, 42 U.S.C. § 2000bb was declared unconstitutional in City v. Boerne v. Flores, 521 U.S. 507 (1997). It has been replaced by the legislation known as the Religious Land Use and Institutionalized Persons Act. This act reads as follows:

As relief, the plaintiff demands a jury trial. In addition, the plaintiff seeks compensatory damages in the amount of $38,000, punitive damages in the amount of $7,000, and an Indemnification Award in the amount of $3,650.

## II. Analysis

### A. USP Hazelton Warden

Liability in a Bivens case is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001)(internal citations omitted). Thus, in order to establish liability in a Bivens case, Plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case.[5]

In this case, plaintiff does not allege any personal involvement on the part of the warden. Instead, it appears that plaintiff has named the defendant merely in his official capacity as the

---

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person - (1) is in furtherance of a compelling government interest; and 92) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc.

[5]In a Bivens case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 297, 401 (11th Cir. 1986).

4

Warden at USP Hazelton. However, a suit against government agents acting in their official capacities is considered a suit against the United States itself. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Official-capacity suits... 'generally present only another way of pleading an action against an entity oh which an officer is an agent.'"). Thus, remedy under Bivens is against federal officials in their individual capacities, not the federal government. Accordingly, plaintiff cannot maintain his claim against the Warden, and the complaint should be dismissed. Moreover, even assuming that plaintiff had named a proper defendant in this case, the complaint should be dismissed for failure to exhaust administrative remedies.

**B. Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[6] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

In addition, although generally, the exhaustion of administrative remedies should be raised by the defendant as an affirmative defense, the court is not foreclosed from dismissing a case *sua*

---

[6] Id.

5

*sponte* on exhaustion grounds. See Anderson v. XYZ Prison Health Services, 407 F.3d 674, 681 (4th Cir. 2005). If the failure to exhaust is apparent from the face of the complaint, the court has the authority under to 28 U.S.C. § 1915 to dismiss the case *sua sponte*. Id. at 682.

The Bureau of Prisons makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. (For inmates confined at FCI-Morgantown, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

Here, Plaintiff admits that his administrative remedies are not exhausted. Thus, the failure to exhaust is clear on the face of the complaint and the *sua sponte* dismissal of this action is appropriate. See Anderson, 407 F.3d at 682.

### III. PLAINTIFF'S PENDING MOTIONS

On December 12, 2006, the plaintiff filed a Motion to Compel a Preliminary Injunction (Dckt. 6). On December 26, 2006, he filed two additional Motions for an Injunction. (Dckt.. 7 & 8). Each deals with the plaintiff's allegations that the staff at USP Hazelton have interfered with his ability to pursue his case in California.

The standard for granting injunctive relief in this Court is the balancing-of-hardships analysis

set forth in <u>Blackwelder Furniture Co. V. Seilig Mfg. Co</u>, 550 F.2d 189 (4th Cir. 1977). In making this analysis, the Court must consider the following four factors:

> (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied,
>
> (2) the likelihood of harm to the defendant if the requested relief is granted,
>
> (3) the likelihood that the plaintiff will succeed on the merits, and
>
> (4) the public interest.

<u>Direx Israel, Ltd. V. Breakthrough Medical Corp.</u>, 952 F.2d 802, 812 (1991) (citation omitted). The "[p]laintiff bears the burden of establishing that each of these factors supports granting the injunction." <u>Id.</u> (citation omitted).

A court will not grant a preliminary injunction unless the plaintiff first makes a "clear showing" that he will suffer irreparable injury without it. <u>Id</u>. (citations and internal quotations omitted). If such harm is demonstrated, the court must balance the likelihood of harm to the plaintiff if an injunction is not granted and the likelihood of harm to the defendant if it is granted. <u>Id</u>. (citation omitted). If the balance of those two factors "'tips decidedly' in favor of the plaintiff, a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." <u>Rum Creek Coal Sales, Inc. V. Caperton</u>, 926 F.2d 353, 359 (4th Cir. 1991) (citations omitted). However, "[a]s the balance tips away from the plaintiff, a stronger showing on the merits is required." <u>Id</u>. (citation omitted),

In this case, the plaintiff cannot establish a likelihood that he will succeed on the merits, because his complaint is due to be dismissed. Accordingly, the plaintiff's motions for injunctive relief should be denied.

## IV. RECOMMENDATION

In consideration of the foregoing, it is recommended that Plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE**, and the plaintiff's motions for injunctive relief (Dckts. 6, 7, 8) be **DENIED**.

Any party may file within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable John P. Bailey, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

IT IS SO ORDERED.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff and counsel of record, as applicable.

DATED: June 25, 2007

    /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE