# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**STEPHEN MICHAEL PAGE,**

    Petitioner,

v.                                                                            **CIVIL ACTION NO. 3:06-CV-131**
                                                                              **(BAILEY)**

**USP HAZELTON WARDEN,**

    Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION

**I.**     **Introduction**

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation of United States Magistrate Judge James E. Seibert. By Standing Order entered on March 24, 2000, this action was referred to Magistrate Judge Seibert for submission of a proposed report and a recommendation ("R & R"). Magistrate Judge Seibert filed his R & R on June 25, 2007 [Doc. 18]. In that filing, the magistrate judge recommended that this Court dismiss the petitioner's application under 28 U.S.C. § 2241 and to deny the plaintiff's motions for injunctive relief [Docs. 6,7,8].

Pursuant to 28 U.S.C. § 636 (b) (1) (c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. ***Thomas v. Arn***, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo* review and the petitioner's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1);

*Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Here, objections to Magistrate Judge Seibert's R & R were due by July 10, 2007, pursuant to 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b). Petitioner filed his Objections [Doc. 19] on July 5, 2007. Accordingly, this Court will conduct a *de novo* review only as to the portions of the report and recommendation to which the petitioner objected. The remaining portions of the report and recommendation to which the petitioner did not object will be reviewed for clear error.

## II.  Factual and Procedural Background

On December 4, 2006, the *pro se* plaintiff, who is a federal inmate incarcerated at USP Hazelton, initiated this case by filing a civil rights complaint against the above-named defendant. On that same date, the Clerk's office sent the plaintiff a Notice advising him that he must either pay the $350.00 filing fee or complete an Application to Proceed Without Prepayment of fees, together with the additional forms necessary for the court to rule on the Application. On December 11, 2006, the plaintiff submitted the Application and supporting forms. On December 12, 2006, the plaintiff was granted leave to proceed without prepayment of fees.

In the complaint, the plaintiff alleges that he has a civil rights case pending in the United States District Court, Central District of California (Western Division-Los Angeles). The plaintiff maintains that the action will be dismissed if he is not able to copy and mail various documents to that Court. The majority of the plaintiff's complaint outlines actions at USP Hazelton, which he alleges have deprived him of the ability to comply with the directives of the District Court in California.

It would appear from the plaintiff's complaint that on October 14, 2006, prison staff

ordered inmates to their housing units and Warden Haynes placed the prison on emergency lock down. On October 16, 2006, the F.B.I. conducted an investigation of Unit A-1 and interviewed each inmate confined to that unit. According to the plaintiff, the investigation lead to the discovery of an alleged homicide in Unit B which occurred on October 14, 2006. The plaintiff also alleges that on October 7, 2006, a new warden toured Unit A-1 and elaborated that "there will be snow on the ground before he allows men out of their cells or the prison off of lock down." Finally, it appears that the plaintiff is alleging that everyone that the F.B.I. and prison administration believed contributed to the emergency lock down was transferred to the Special Housing Unit ("SHU").

The plaintiff's complaint also alleges that during the month of October, he was granted access to a copier but was not allowed to complete copying of all needed documents. The plaintiff further alleges that on October 21, 2006, prison staff conducted a cell search and removed several legal documents, ink pens, and took all mailing parcels, flat rate envelopes, and flat rate box priority mail which were filled with legal documents and addressed to the United States District Court in Los Angeles and to the US Attorney.

In addition to his complaints outlined above, which the plaintiff maintains denied him access to the courts, the plaintiff also alleges that USP Hazelton does not maintain a satellite law library or staff to assist in preparation and research of legal documents to afford meaningful or effective access to the courts.

Finally, in a matter wholly unrelated to his claims regarding access to the courts, the plaintiff alleges that he was refused sick call by the physician's assistant on October 23, 2006, and the physician's assistant refused to provide medical care. As well, the plaintiff alleges that the staff at USP Hazelton has denied him access to Religious Diet Meals in

violation of the Religious Freedom Restoration Act and the First Amendment.

As relief, the plaintiff demands a jury trial. In addition, the plaintiff seeks compensatory damages in the amount of $38,000, punitive damages in the amount of $7,000, and an Indemnification Award in the amount of $3,650.

**III.    Analysis**

Liability in a **Bivens** case is "personal, based upon each defendant's own constitutional violations." **Trulock v. Freeh**, 275 F.3d 391, 402 (4th Cir. 2001)(internal citations omitted). Thus, in order to establish liability in a **Bivens** case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. *See* **Wright v. Smith**, 21 F.3d 496, 501 (2d Cir. 1994); **Colburn v. Upper Darby Township**, 838 F.2d 663, 666 (3rd Cir. 1988). Some personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. *See* **Zatler v. Wainwright**, 802 F.2d 397, 401 (11th Cir. 1986). Respondeat superior cannot form the basis of a claim for a violation of a constitutional right in a **Bivens** case.

In this case, the plaintiff does not allege any personal involvement on the part of the warden. Instead, it appears that the plaintiff has named the defendant merely in his official capacity as the Warden at USP Hazelton. However, a suit against government agents acting in their official capacities is considered a suit against the United States itself. *See* **Kentucky v. Graham**, 473 U.S. 159, 165 (1985) ("Official-capacity suits... 'generally present only another way of pleading an action against an entity oh which an officer is an agent.'"). Thus, remedy under **Bivens** is against federal officials in their individual capacities, not the federal government. Accordingly, plaintiff cannot maintain his claim against the Warden, and the complaint should be dismissed. Moreover, even assuming

that the plaintiff had named a proper defendant in this case, the complaint should be dismissed for failure to exhaust administrative remedies.

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. **Booth v. Churner**, 532 U.S. 731, 741 (2001). A **Bivens** action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. **Porter v. Nussle**, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," and is required even when the relief sought is not available. **Booth**, at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted prior to filing a complaint in federal court. *See* **Porter**, 534 U.S. at 524 (citing **Booth**, 532 U.S. at 741) (emphasis added).

In addition, although generally, the exhaustion of administrative remedies should be raised by the defendant as an affirmative defense, the court is not foreclosed from dismissing a case sua sponte on exhaustion grounds. *See* **Anderson v. XYZ Prison Health Services**, 407 F.3d 674, 681 (4th Cir. 2005). If the failure to exhaust is apparent from the face of the complaint, the court has the authority under to 28 U.S.C. § 1915 to dismiss the case sua sponte. *Id.* at 682.

The Bureau of Prisons makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. *See* 28 C.F.R. § 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is

denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

Here, the plaintiff admits that his administrative remedies are not exhausted. Thus, the failure to exhaust is clear on the face of the complaint and the *sua sponte* dismissal of this action is appropriate. See **Anderson**, 407 F.3d at 682.

### IV. Plaintiff's Pending Motions

On December 12, 2006, the plaintiff filed a Motion to Compel a Preliminary Injunction [Doc. 6]. On December 26, 2006, he filed two additional Motions for an Injunction. [Docs. 7 & 8]. Each deals with the plaintiff's allegations that the staff at USP Hazelton have interfered with his ability to pursue his case in California.

The standard for granting injunctive relief in this Court is the balancing-of-hardships analysis set forth in **Blackwelder Furniture Co. v. Seilig Mfg. Co**, 550 F.2d 189 (4th Cir. 1977). In making this analysis, the Court must consider the following four factors:

(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied,

(2) the likelihood of harm to the defendant if the requested relief is granted,

(3) the likelihood that the plaintiff will succeed on the merits, and

(4) the public interest.

**Direx Israel, Ltd. v. Breakthrough Medical Corp.**, 952 F.2d 802, 812 (1991) (citation

omitted). The "[p]laintiff bears the burden of establishing that each of these factors supports granting the injunction." *Id*. (citation omitted).

A court will not grant a preliminary injunction unless the plaintiff first makes a "clear showing" that he will suffer irreparable injury without it. *Id*. (citations and internal quotations omitted). If such harm is demonstrated, the court must balance the likelihood of harm to the plaintiff if an injunction is not granted and the likelihood of harm to the defendant if it is granted. *Id*. (citation omitted). If the balance of those two factors "'tips decidedly' in favor of the plaintiff, a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." **Rum Creek Coal Sales, Inc. v. Caperton**, 926 F.2d 353, 359 (4th Cir. 1991) (citations omitted). However, "[a]s the balance tips away from the plaintiff, a stronger showing on the merits is required." *Id*. (citation omitted).

In this case, the plaintiff cannot establish a likelihood that he will succeed on the merits, because his complaint is due to be dismissed. Accordingly, the plaintiff's motions for injunctive relief should be denied.

**V. Conclusion**

It is the opinion of the Court that the **Magistrate Judge's Report and Recommendation** [Doc. 19] should be, and is, hereby **ORDERED ADOPTED**. It is further **ORDERED** that petitioner's [Doc. 1] be, and is the same, hereby **DISMISSED without prejudice**, and the plaintiff's motions for injunctive relief [Docs. 6,7,8] are hereby **DENIED**.

The Clerk is directed to mail a copy of this Order to all counsel of record and the *pro*

*se* petitioner.

**DATED:** August 8, 2007.

/s/ John Preston Bailey
JOHN PRESTON BAILEY
UNITED STATED DISTRICT JUDGE